# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY,<br><br>          Plaintiff,<br>   vs.<br><br>VITAL PHARMACEUTICAL, INC., a.k.a "VPX," a Florida corporation,<br><br>          Defendant. | CASE NO. 08-CV-1545 IEG (POR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Doc. No. 6.)** |

Presently before the Court is plaintiff Hansen Beverage Company's motion requesting an order enjoining the advertising and labeling of defendant's products. (Doc. No. 6.) For the reasons explained herein, the Court DENIES the motion. The Court also overrules plaintiff's evidentiary objections and denies defendant's request for attorney's fees and costs under 28 U.S.C. § 1927.

## BACKGROUND

<u>Factual Background</u>

Plaintiff Hansen Beverage Co. ("Hansen") brings this action for false advertising against defendant Vital Pharmaceutical, Inc. ("VPX"). Plaintiff produces the "Monster" energy drink and other energy beverages, including the "Hit Man" "energy shot." Defendant produces the "REDLINE Power Rush! 7-Hour Energy Boost" 2-ounce energy shot ("Power Rush"). Plaintiff seeks a preliminary injunction enjoining defendant from making claims its product gives "7 Hours of Pure Energy," "7 Hours of Sustained Energy," and "No Crash." (Motion at 3.)

Procedural Background

Plaintiff filed suit on August 21, 2008 (Doc. No. 1,) alleging two causes of action: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (2) false advertising and unfair competition in violation of California Business and Professions Code Sections 17200 and 17500. On September 8, 2008, plaintiff filed the instant motion for preliminary injunction. (Doc. No. 6.) On October 9, 2008, defendant filed an answer to the complaint. (Doc. No. 24.) On November 17, 2008, defendant filed an opposition to the motion for preliminary injunction, (Doc. No. 25,) and plaintiff filed a reply on December 1, 2008. (Doc. No. 28.) The Court heard oral argument on the motion on December 8, 2008.

## DISCUSSION

I.   Legal Standard

A preliminary injunction is appropriate if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits of the case and the balance of hardships tips sharply in favor of the moving party. Stuhlbarg Intern. Sales Co. v. John D. Brush and Co., 240 F.3d 832, 839-840 (9th Cir. 2001). These are not two separate tests, but rather two points on a sliding scale in which the required showing of harm varies inversely with the required showing of meritoriousness. Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). Courts have also traditionally considered the advancement of the public interest when granting a preliminary injunction. Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995). In any situation, the court must find there is some significant threat of irreparable injury, even if that injury is not of great magnitude. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 724 (9th Cir. 1999).

The factual determinations the court makes when granting or denying preliminary injunctive relief, and the legal conclusions drawn from them, are not final adjudications on the merits; rather, the court "need only find probabilities that the necessary facts can be proved." Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415, 1423 (9th Cir. 1984). No preliminary injunction may issue without a security posted by the applicant in an amount determined by the

1 Court as sufficient to protect the interests of the enjoined party.  See Fed. R. Civ. P. 65(c) (2008).

## II. Issue Preclusion

Defendant argues the Court should reject two[1] of plaintiff's arguments under the doctrine of issue preclusion.[2]  The first is that the definition of "energy" is narrowly confined to caloric energy ("energy argument").  See Section III (A) *infra*.  The second is that a presumption of irreparable harm may apply in this case ("presumption argument").  See Section IV (A) *infra*. Defendant argues the Court has already considered and rejected Hansen's identical arguments in Hansen Bev. Co. v. Innovation Ventures, LLC, 2008 U.S. Dist. LEXIS 76243 (S.D. Cal. Sept. 29, 2008).  The Court finds the issue preclusion doctrine bars plaintiff's presumption argument, but not plaintiff's energy argument.

In the Ninth Circuit, issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.  Frankfort Digital Servs. v. Kistler (In re Reynoso), 477 F.3d 1117, 1122 (9th Cir. 2007).  In this case, the first requirement is satisfied. In Innovation Ventures the Court addressed the parties' contrary definitions of "energy" and declined to resolve the factual dispute "on such a limited record."  Innovation Ventures, 2008 U.S. Dist. LEXIS 76243, at *9.  The same issue is before the Court in the present case.  Similarly, in Innovation Ventures, the Court declined to adopt plaintiff's identical argument of irreparable harm partially because, as a matter of law, the court declined "to deviate from traditional principles of equity without binding, in-Circuit authority."  Id. at *10-11.  The third requirement is satisfied because plaintiff was a party in Innovation Ventures.

There is a serious question, however, as to whether a determination made in a preliminary

---

[1] Defendant's opposition does not specify which issues Hansen Bev. Co. v. Innovation Ventures, LLC, 2008 U.S. Dist. LEXIS 76243 (S.D. Cal. Sept. 29, 2008) precludes from the instant motion.  At oral argument, defense counsel identified the two issues the Court discusses herein.

[2] "Rather than using the terms 'res judicata' and 'collateral estoppel,' the Supreme Court has [in recent years generally] used the terms 'claim preclusion' and 'issue preclusion,'" Frank v. United Airlines, Inc., 216 F.3d 845, 850 n.4 (9th Cir. 2000) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984)).

1  injunction proceeding is a "final judgment on the merits" for purposes of issue preclusion.
2  Defendant correctly points out the Third and Seventh Circuits have held that findings made in
3  granting or denying preliminary injunctions can have preclusive effect.  In Miller Brewing Co. v.
4  Jos. Schlitz Brewing Co., 605 F.2d 990, 996 (7th Cir. 1978), the Seventh Circuit held its judgment
5  in a preliminary injunction appeal had preclusive effect in a subsequent case between the same
6  plaintiff and another defendant, even though "such a judgment will ordinarily not foreclose
7  subsequent litigation on the merits."[3]

8  The Ninth Circuit has not specifically addressed the preclusive effect of findings made
9  during preliminary injunction proceedings.  However, the Ninth Circuit has relied upon Miller
10 Brewing in reasoning, "to be 'final' for collateral estoppel purposes, a decision need not possess
11 'finality' in the sense of 28 U.S.C. § 1291.[4]  A 'final judgment' for purposes of collateral estoppel
12 can be any prior adjudication of an issue in another action that is determined to be 'sufficiently
13 firm' to be accorded conclusive effect." Luben Industries, Inc. v. United States, 707 F.2d 1037,
14 1040 (9th Cir. 1983) (citing Miller Brewing, 605 F.2d at 996).  Luben held preclusion should be
15 refused if the prior decision was "avowedly tentative," but preclusion is supported if the parties
16 were fully heard, the Court supported its decision with a reasoned opinion, and the decision was
17 subject to appeal.  Id. (quoting Restatement (Second) of Judgments § 13 (1982)).  The Ninth
18 Circuit has also held the *factual determinations* made by a court when granting or denying
19 preliminary injunctive relief, and the *legal conclusions drawn from those factual determinations*
20 are not final adjudications on the merits.  Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415,
21 1423 (9th Cir. 1984).

22 The Court accordingly finds the factual determinations and associated legal conclusions
23 made in Innovation Ventures do not have preclusive effect in the present case, but the
24 determination of pure questions of law are "sufficiently firm" to preclude re-consideration here.

---

[3] See also Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (holding a court's findings in a preliminary injunction proceeding may have preclusive effect if the circumstances make it likely that the findings are "sufficiently firm" to persuade the court there is no compelling reason for permitting them to be litigated again).

[4] 28 U.S.C. § 1291 provides for the jurisdiction of the courts of appeal over "all final decisions of the district courts of the United States."

The energy argument was fact-based, "avowedly tentative," and cannot have preclusive effect in the present case. The presumption argument is precluded because it was a purely legal argument upon which the parties were fully heard and the Court rendered a reasoned opinion. [5]

### III.  Likelihood of Success on the Merits

#### A.  Plaintiff's Arguments

Plaintiff argues it is likely to succeed on its claim for false advertising under the Lanham Act. Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiff argues the claims defendant makes on the Instant Energy and Wicked Energy labels are literally false. Plaintiff relies on a declaration by an in-house expert, Dr. Thomas Davis. Dr. Davis declares that "energy" requires the consumption and burning of calories. (Davis Decl. at ¶ 12.) Power Rush, as a low-calorie product, therefore "does not, and cannot, produce energy, a defined scientific term, for the period of time that Vital Pharmaceuticals claims, in any measurable amount. . . ." (Id. at ¶ 5.) Dr. Davis defines energy as the ability to do work, a scientific meaning, not the "energized feeling" which a user may obtain from substances such as caffeine. (Id. at ¶¶ 7, 17.)

Plaintiff particularly takes issue with Power Rush's claims of "7 Hours of Pure Energy," "7 Hours of Sustained Energy," and "no crash." Plaintiff argues such claims are scientifically

---

[5] Defendant makes a cursory argument that plaintiff should pay reasonable attorneys' fees and costs under 28 U.S.C. § 1927, which provides "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2008). The Court denies defendant's request.

1  impossible. (Motion at 9.)  Plaintiff relies on Dr. Davis' statement that "in his expert opinion" the

2  claims "are false based on the drink's ingredients, the concentration of those ingredients, and

3  generally accepted principles of biochemistry, pharmacology, and physiology." (Davis Decl. at ¶

4  5.) Dr. Davis maintains Power Rush's claims are scientifically impossible regardless of whether

5  the Court construes the definition of "energy" as caloric energy or merely an "energized feeling."

6  (Id. at ¶ 17.)

7        B.     Defendant's Arguments

8        In response, defendant argues its advertising claims are not "literally false." Defendant has

9  submitted a declaration by Dr. Jose Antonio.[6] Dr. Antonio declares that there are definitions of

10 energy different than the narrow calorie-based definition upon which plaintiff's expert relies. Dr.

11 Antonio notes that other products on the market, such as Hansen's own "Lo-Carb MONSTER

12 ENERGY" product, are called "energy drinks" despite having little or no sugar. Dr. Antonio next

13 opines that caffeine, one of the main ingredients of defendant's product, is reasonably classifiable

14 as an energizing ingredient. Dr. Antonio cites numerous scientific studies to support his opinion

15 about the effects of caffeine and his opinion that other Power Rush ingredients (such as amino

16 acids and vitamins) can contribute to the production of glucose in the body (a potential source of

17 energy) as well as buffer acidic buildup in the muscles, adding to physical work capacity.

18 (Antonio Decl. at ¶¶ 13-16.) Pursuant to these reasons, Dr. Antonio opines that consumption of

19 one bottle of Power Rush would enhance energy over a seven hour period. (Id. at ¶ 4.)

20       Defendant also argues there is a factual dispute that precludes the Court from determining

21 whether Power Rush's "no crash" claim is literally false. (Opp. at 8.) Defendant notes Dr. Davis

22 does not define the term "crash" or explain why VPX's "no crash" claim is false. Defendant has

23 also submitted a declaration by John Owoc, Vital Pharmaceuticals' President, Chief Executive

---

[6] Plaintiff has submitted objections to the declarations of Dr. Antonio and John Owoc, predominantly arguing they provide improper expert testimony under Fed. R. Evid. 702. It is within the discretion of the district court to accept even inadmissible evidence for purposes of deciding whether to issue a preliminary injunction. Republic of Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988). See also Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."). The Court therefore overrules all of plaintiff's evidentiary objections, and exercises its discretion to consider the proffered evidence as appropriate.

1  Officer, and Chief Scientific Officer. Mr. Owoc declares Power Rush does not cause "crash,"
2  which he defines as an insulin spike in the blood that occurs as a result of the ingestion of too
3  much sugar. (Owoc Decl. at ¶ 11.) Mr. Owoc asserts the insulin spike does not occur because
4  there is no sugar in the product. (Owoc Decl. at ¶ 12.)

5      C.    Analysis

6  The parties' moving papers and arguments during the hearing reveal numerous disputes of
7  fact that preclude the Court from determining the plaintiff is likely to prevail on the merits of a
8  Lanham Act false advertising claim. First, the parties offer expert declarations providing contrary
9  definitions of "energy." Plaintiff's view is that the word "energy" can only mean caloric energy.
10 Defendant's view is that "energy" may be understood more broadly, and moreover that caffeine,
11 amino acids, and vitamins can actually increase physical energy. At oral argument plaintiff
12 conceded the determination of literal falsity as to defendant's definition of energy is premature on
13 such a limited factual record. Second, the parties' experts dispute whether Power Rush can
14 provide 7 hours of sustained energy. Third, the parties dispute whether consumption of Power
15 Rush results in "no crash." "In deciding a motion for preliminary injunction, the district court is
16 not bound to decide doubtful and difficult questions of law or disputed questions of fact." Int'l
17 Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 551 (9th Cir. 1986)
18 (internal citations omitted). Accordingly, the Court declines to resolve these factual disputes on
19 such a limited record, and finds plaintiff has not demonstrated a likelihood of success on the
20 merits.

21 IV.    Irreparable Harm

22     A.    Presumption of Irreparable Harm

23 Plaintiff offers scant evidence it will suffer irreparable harm absent injunctive relief.
24 Plaintiff submits the sole evidence of such harm is the Declaration of Hansen's Chief Executive
25 Officer, Rodney Sacks. Sacks generally states defendant's labels have influenced and will
26 continue to influence "substantial numbers" of consumers' purchasing decisions. (Sacks Decl. at ¶
27 16.) Sacks further states, "I believe Vital Pharmaceutical's ads have adversely affected Hansen's
28 sales, even though I cannot quantify precisely by how much." (Id. at ¶ 19.)

Plaintiff argues the Court should *presume* irreparable harm because plaintiff has shown

1  defendant's advertising claims are literally false.  First, the Court declines to apply such a

2  presumption because plaintiff has not shown literal falsity.  Second, the Court has already rejected

3  this argument in <u>Innovation Ventures</u> and has decided the doctrine of issue preclusion bars

4  plaintiff from re-asserting it here.  See Section II *supra*.  Third, even if issue preclusion did not bar

5  plaintiff's argument, the Court still declines to deviate from traditional principles of equity without

6  binding, in-Circuit authority in light of <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006)

7  (holding courts should not apply blanket presumptions when evaluating the propriety of equitable

8  relief) and <u>Reno Air Racing Assoc., Inc. v. McCord</u>,452 F.3d 1126, 1137-38 (9th Cir. 2006)

9  (explaining "[t]he Supreme Court recently reiterated that district courts should apply 'traditional

10  equitable principles' in deciding whether to grant permanent injunctive relief and the decision is

11  'an act of equitable discretion by the district court. . . .'") (<u>citing</u> <u>eBay</u>, 126 S. Ct. at 1839).

12       <u>B.</u>     <u>Traditional Principles of Equity</u>

13       Traditional equitable principles disfavor an injunction in the circumstances of this case.

14  First, courts are especially hesitant to alter the status quo before a full trial on the merits.  As the

15  Ninth Circuit explained in <u>Tanner Motor Livery, Ltd. v. Avis, Inc.</u>, 316 F.2d 804 (9th Cir. 1963):

16 > It is so well settled as to not require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a
17 > determination of the action on the merits.  The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant
18 > the moving party the full relief to which he might be entitled if successful at the conclusion of a trial.  This is particularly true where the relief afforded, rather than
19 > preserving the status quo, completely changes it.

20  <u>Id.</u> at 808-09; <u>see also</u> <u>LGS Architects, Inc. v. Concordia Homes of Nev.</u>, 434 F.3d 1150, 1158

21  (9th Cir. 2006) ("[The requested relief] will not further the purpose of a preliminary injunction,

22  which is merely to preserve the relative positions of the parties until a trial on the merits can be

23  held.")  Plaintiff's requested injunction would alter the status quo because defendant would have

24  to remove its product from the market, which would undoubtedly harm the Power Rush brand and

25  market position.  Defendant would also be forced to change or destroy millions of bottles of

26  product in its possession, according to Mr. Owoc's declaration.  The balance of equities disfavors

27

28

the entering of the injunction without further factual development.[7]

Second, plaintiff's delay in bringing suit weighs against granting a preliminary injunction. Power Rush has been sold since September 2007. Plaintiff sought this preliminary injunction one year later, in September 2008. Plaintiff argues it only had reason to bring suit after discovering defendant's claims were false, upon "investigat[ing] the energy shot market" in July and August 2008 and "start[ing] to look more closely at [defendant's] specific advertising claims." (Reply at 10.) This argument indicates plaintiff knew about Power Rush for at least several months before taking legal action, regardless of its reasons for delay. This claim also bears against a finding of irreparable harm because it shows plaintiff did not believe Power Rush had a serious impact on its business until almost a year after defendant introduced the product. Delays in requesting an injunction, whether for months or years, tend to negate a claim of irreparable harm. See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); Givemepower Corp. v. Pace Compumetrics, Inc., No. 07cv157 WQH, 2007 WL 951350 (S.D. Cal. Mar. 23, 2007) (holding delay of two months, in circumstances of case, negated showing of irreparable harm).

The Court therefore finds the balance of equities disfavors a change in the status quo before a full trial on the merits.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED.**

**DATED: December 30, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[7] Plaintiff suggested at oral argument that the Court could fashion a modified equitable remedy allowing defendant to sell the rest of its existing inventory, but enjoin the contested labeling on future batches of Power Rush. The Court finds plaintiff's willingness to wait until defendant depletes its inventory weighs against plaintiff's argument that it is being irreparably harmed by Power Rush.