**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HANSEN BEVERAGE COMPANY, a Delaware corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>VITAL PHARMACEUTICAL, INC. aka VPX, a Florida corporation,<br><br>            Defendant. | CASE NO. 08-CV-1545-IEG (POR)<br><br>**ORDER GRANTING VITAL PHARMACEUTICAL'S MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES AND OTHER MONETARY RELIEF**<br><br>**[Doc. No. 108]** |

This is a false advertising case brought by Plaintiff Hansen Beverages Co. ("Hansen") against Defendant Vital Pharmaceutical, Inc.'s ("VPX"). Presently before the Court is VPX's motion for partial summary judgment regarding damages and other monetary relief. (Doc. No. 108.) Hansen has filed an opposition, and VPX has filed a reply. The Court heard oral argument on July 12, 2010. Based upon the arguments of the parties, and for the reasons set forth herein, the Court GRANTS VPX's motion.

## BACKGROUND

Hansen and VPX are competitors in the energy drink and energy shot markets. Hansen produces Monster Energy drinks and Monster Hitman Energy Shooter ("Hitman"), an energy shot. VPX produces energy drinks including Redline Princess ("Princess"), and Redline Power Rush! 7-Hour Energy Boost ("Power Rush"), an energy shot.

Hansen commenced this action on August 21, 2008, alleging VPX made false statements in

its advertising about certain of its energy products. (Doc. No. 1.) On December 30, 2008, the Court denied Hansen's motion for a preliminary injunction enjoining VPX from making claims that Power Rush provides "7 Hours of Pure Energy," "7 Hours of Sustained Energy," and "No Crash." (Doc. No. 33.)

On April 17, 2009, Hansen filed a First Amended Complaint alleging three causes of action: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising and unfair competition in violation of California Business and Professions Code §§ 17200 and 17500; and (3) trade libel. (Doc. No. 44.)

On March 1, 2010, the parties filed cross-motions for summary judgment. (Doc. Nos. 107, 108, 109.) The Court denied Hansen's motion, and denied in part VPX's motion. Specifically, the Court found genuine issues of material fact existed as to whether the following claims are literally false:[1]

1. Power Rush provides seven hours of energy.
2. Power Rush results in "No Crash"
3. Power Rush is "The #1 Energy Shot in Los Angeles."
4. Princess provides "mood enhancement" and "appetite suppression," which is "nothing short of euphoric."

In addition, the Court denied VPX's motion for partial summary judgment regarding damages and monetary relief, without prejudice to it being re-filed before May 31, 2010.[2] Plaintiff timely re-filed the instant motion for partial summary judgment, arguing Hansen is not entitled to any monetary relief.[3]

//

---

[1] The Court granted VPX's motion for partial summary judgment as to certain advertising claims about Power Rush, and two of VPX's other energy drink products, and also granted VPX's motion for partial summary judgment on the trade libel cause of action.

[2] The Court denied the motion at that time because Hansen's damages expert had not yet prepared a supplemental report incorporating financial information recently turned over by VPX.

[3] VPX moves for judgment with regard to Hansen's request for money damages, recovery of VPX's profits, three times Hansen's actual money damages, attorneys' fees, disgorgement of VPX's profits, and punitive damages.

**EVIDENTIARY OBJECTIONS**

VPX moves to strike the Declaration of Dr. Patrick Kennedy ("Kennedy") and the Declaration of Hansen's CEO, Rodney Sacks ("Sacks"), which were submitted in support of Hansen's opposition. These declarations set forth a number of identical opinions relating to market share and sales growth of Hansen's products and other companies' energy products. VPX argues these declarations should be stricken because they set forth new expert opinions not properly disclosed by the expert report deadline.

A party is required to disclose expert testimony accompanied by a written report containing: "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i-ii). A party is further obligated to supplement information included in expert witness reports. Fed. R. Civ. P. 26(e). If a party fails to comply with the disclosure rules, the district court has discretion under Rule 37(c)(1) of the Federal Rules of Civil Procedure to impose a sanction: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the party facing sanctions to prove the failure to disclose was substantially justified or harmless. <u>Yeti By Molly, Ltd. v. Deckprs Outdoor Corp.</u>, 259 F.3d 1101, 1108 (9th Cir. 2001).

The Court grants in part VPX's motion to strike, and excludes Kennedy's declaration. Although Hansen disclosed Kennedy's expert report and supplemental report, Kennedy's declaration contains opinions not disclosed in these reports or elsewhere. However, the Declaration of Sacks is not excluded. Hansen previously disclosed Sacks as "a non-retained expert witness," but Sacks did not submit an expert report and denied at his deposition that he was a damages expert. In addition, Hansen points to deposition testimony by Sacks disclosing the opinions contained in his declaration. Because VPX was aware of Sack's opinions and questioned him about these opinions at his deposition, Hansen's failure to provide an expert report disclosing these opinions was harmless.

1    The parties' other objections do not affect the substantive decision on the merits, and the
2    Court denies these objections as moot.

## LEGAL STANDARD

4    Summary judgment is proper where the pleadings and materials demonstrate "there is no
5    genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."
6    Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is genuine
7    "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
8    The moving party bears "the initial responsibility of informing the district court of the basis
9    for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that
10   no genuine issue of material fact exists for trial. Id. at 322. Where the moving party does not have
11   the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two
12   ways: "The moving party may produce evidence negating an essential element of the nonmoving
13   party's case, or, after suitable discovery, the moving party may show that the nonmoving party
14   does not have enough evidence of an essential element of its claim or defense to carry its ultimate
15   burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106
16   (9th Cir. 2000).
17   If the moving party carries its initial burden, the nonmovant must then show that there are
18   genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson Sch. Dist.
19   No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The nonmoving party may not rely on the pleadings
20   alone, but must present specific facts creating a genuine issue of material fact through affidavits,
21   depositions, or answers to interrogatories. Fed R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The
22   court must review the record as a whole and draw all reasonable inferences in favor of the
23   nonmoving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).
24   However, unsupported conjecture or conclusory statements are insufficient to defeat summary
25   judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

## DISCUSSION

27   VPX moves for partial summary judgment on the issue of whether Hansen is entitled to
28   monetary relief under the Lanham Act or California Business and Professions Code §§ 17200 and

17500.  VPX contends Hansen is not entitled to monetary relief under either statute.

**I.      Monetary Relief Under California Business & Professions Code**

Hansen's second cause of action is for false advertising in violation of California Business & Professions Code §§ 17200 and 17500.  The governing remedies provision, Section 17203, allows courts to make orders or judgments "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

In Theme Promotions v. News America Marketing FSI, the Ninth Circuit explained that Section 17203 "allows awards of restitution, but not awards of non-restitutionary disgorgement." 546 F.3d 991, 1008-1009 (9th Cir. 2008).  The Ninth Circuit further explained that under California law, restitution orders are orders compelling a defendant to return money "to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person. . . . [N]onrestitutionary disgorgement is akin to a damages remedy; relief that is not allowed under the UCL." Id.

Hansen seeks VPX's profits from Power Rush and Princess.  VPX argues Hansen would not be entitled to monetary relief pursuant to Section 17203, because Hansen has no property interest in VPX's profits, and Hansen does not raise any arguments to the contrary.  Accordingly, the Court finds VPX is entitled to summary judgment on this issue.   Hansen is not entitled to monetary damages under the California Business & Professions Code.

**II.     Monetary Relief Under the Lanham Act**

**A.     Section 1117(a)**

Hansen's first cause of action is for false advertising in violation of the Lanham Act. Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), governs the award of monetary remedies in false advertising cases.  This section provides for an award "subject to the principles of equity" of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the

action."[4] 15 U.S.C. § 1117(a). Section 1117(a) further provides:

> The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

Id. The language of § 1117 "confers a wide scope of discretion upon the district judge in the fashioning of a remedy." Faberge, Inc. v. Saxony Products, Inc., 605 F.2d 426, 429 (9th Cir. 1979) (quoting Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 121 (9th Cir. 1968), *cert. denied*, 391 U.S. 966 (1968)). "The equitable limitation upon the granting of monetary awards under the Lanham Act, . . . would seem to make it clear that such a remedy should not be granted as a matter of right." Maier Brewing, 390 F.2d at 120. In the Ninth Circuit, courts are to employ a "totality of the circumstances approach" in fashioning monetary relief. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1146 (9th Cir. 1997) (quoting Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1411 (9th Cir. 1993)).

### B.    Actual Damages Sustained by Hansen

Under the Lanham Act, Hansen may recover any damages it has sustained, "subject to the principles of equity." See 15 U.S.C. § 1117(a). Hansen seeks damages in the amount of VPX's net profits for Power Rush and Princess.

As explained below, Hansen is not entitled to actual damages. Although Hansen has presented sufficient evidence to create a genuine issue of material fact as to whether Hansen suffered actual injury, the evidence of the amount of damages is speculative at best, and an award of actual damages would be improper.

#### 1.    Legal Standard

To obtain actual damages pursuant to Section 1117(a), Hansen "must prove both the fact

---

[4] It is unclear under which theory Hansen seeks damages. Hansen's opposition refers to "actual damages," but Hansen asserted at oral argument that it seeks "defendant's profits." The Court therefore analyzes Hansen's entitlement to monetary relief under both theories.

1  and the amount of damage." See Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th

2  Cir. 1993).  Hansen's argument that proof of actual injury is not required to obtain damages is

3  without merit.  Hansen relies on the Ninth Circuit's statement in Southland Sod Farms v. Stover

4  Seed Co. that "an inability to show actual damages does not alone preclude a recovery under

5  section 1117."[5]  108 F.3d 1134, 1146 (9th Cir. 1997) (quoting Lindy Pen, 982 F.2d at 1411)).

6  However, this statement does not stand for the proposition that actual injury is not required to

7  obtain damages.  The Southland Sod Court then goes on to explain that "[p]ublication of

8  deliberately false comparative claims gives rise to a *presumption* of actual deception and reliance."

9  Id. (quoting U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1040-41 (9th Cir.1986) (emphasis

10 added). In the absence of such a presumption, *plaintiffs must prove actual injury*, which may be

11 shown by consumer survey testimony and market analysis testimony.  See Southland Sod, 108

12 F.3d at 1146 (holding that even if plaintiffs were not entitled to a presumption of actual consumer

13 deception and reliance, the consumer survey testimony and market analysis testimony in that case

14 was "adequate evidence for a reasonable jury to conclude that Plaintiffs suffered actual injury").[6]

15     Hansen's argument is further undermined by the fact that the Ninth Circuit in Lindy Pen

16 cited with approval cases holding that actual loss must be proved to recover damages.  See

17 Foxtrap, Inc. v. Foxtrap, Inc., 671 F.2d 636, 642 (D.C. Cir.1982) ("any award based on plaintiff's

18 damages requires some showing of actual loss");  Burndy Corp. v. Teledyne Indus., Inc., 584

---

[5]The passage Hansen quotes from Southland Sod Farms v. Stover Seed Co. states in full:

> [A]lthough the Ninth Circuit in Harper House stated that "actual evidence of some injury resulting from the deception is an essential element" in a suit for damages under § 43(a), id. (emphasis omitted), a more recent decision holds that "an inability to show actual damages does not alone preclude a recovery under section 1117." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1411 (9th Cir.1993) (quoting Bandag, Inc. v. Bolser's Tire Stores, 750 F.2d 903, 919 (Fed.Cir.1984)). Under Lindy Pen, the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances. Id.

108 F.3d 1134, 1146 (9th Cir. 1997).

[6]In addition, the Ninth Circuit's statement that "an inability to show actual damages does not alone preclude a recovery under section 1117" is not inconsistent with requiring proof of actual injury to recover *actual damages*. Under Section 1117(a), a plaintiff can recover *defendant's profits*, without proof of actual injury. See Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000); Southland Sod, 108 F.3d at 1146 (citing Lindy Pen, 982 F.2d at1410-11); Maier Brewing, 390 F.2d at 123.

1  F.Supp. 656, 664 (D.C. Conn. 1984) ("[N]o assessment of damages is authorized if it is not based
2  on actually proven damages."), *aff'd* 748 F.2d 767 (2d Cir. 1984); Invicta Plastics (USA) Ltd. v.
3  Mego Corp., 523 F. Supp. 619, 624 (S.D.N.Y. 1981) ("damages will not be awarded in the absence
4  of credible evidence demonstrating injury to the plaintiff from defendant's sales.").

5  Therefore, Hansen must prove both the fact and the amount of damage in order to receive
6  an award of actual damages under Section 1117(a).

### 2. Fact of Damage

Hansen's theory of damage is that VPX's alleged false advertising diverted sales from Monster Energy and Hitman and damaged Hansen's reputation and goodwill.

In 2002, Hansen launched Monster Energy.[7] In convenience stores and gas stations ("C&G"), the primary channel in which energy drinks and energy shots are sold, Monster Energy has the second greatest market share of any energy drink brand in terms of value, and the greatest market share in terms of volume, and units. (Sacks Decl. ¶¶ 8, 18.) In 2005, the leading energy shot, 5-Hour Energy, was launched. Hansen contends 5-Hour Energy falsely claims its energy shot provides five hours of energy and "no crash." (Sacks Decl. ¶¶ 9, 18.) Hansen further contends that dozens of companies, including VPX, have launched energy shots making similar duration and "no crash" claims, because these companies recognize such claims motivate consumers to purchase. (Notice of Lodgment in Supp. of Hansen's Opp'n ("NOL"), Ex. 1, Owoc. Depo. at 89:12-90:3.) In late 2008, Hansen introduced its own energy shot, Hitman. (Sacks Decl. ¶ 15.) Hansen does not make duration or "no crash" claims in connection with either Monster Energy or Hitman.

Hansen has presented evidence from which a reasonable jury could infer Monster Energy and Power Rush are sold in the same C&G stores. Hansen's energy drinks, including Monster Energy, are sold in more than 100,000 retail stores. (Sacks Decl. ¶ 8.) For the first quarter of 2009, Monster Energy was sold in 95% of C&G stores nationwide. (Sacks Decl. ¶ 17.) During the same time period, Power Rush was sold in 4% of C&G stores nationwide. (Sacks Decl. ¶ 17.) VPX's energy drinks are

---

[7] Monster Energy drinks include Monster Energy, Lo-Carb Monster, Monster Khaoes, and several other drinks. (Declaration of Rodney Sacks in Supp. of Hansen's Opp'n ("Sacks Decl.") ¶ 7.)

1  sold in C&G stores, as well as other retail locations. (NOL, Ex. 2, Deposition of Dale Purvis at 20:10-
2  15; 53:14-19 85:2-23; Sacks Decl., ¶¶ 16-18.)[4]

3  Hansen has also presented evidence that Monster Energy's sales have slowed since the
4  introduction on the market of energy shots like Power Rush, making duration and "no crash" claims.
5  In his declaration, Hansen's CEO, Rodney Sacks, opines Monster Energy's sales have slowed, while
6  sales for energy shots making duration and "no crash" claims have risen. (Sacks Decl. ¶ 19.) Sacks
7  bases this conclusion on a comparison of the growth rates of Monster Energy and 5-Hour Energy.
8  According to AC Nielsen market data, between 2006 and 2009, Monster Energy's sales growth slowed
9  considerably (from 107% to 3%), while 5-Hour Energy's sales continued to grow dramatically every
10 year (613% to 77%). (Sacks Decl. ¶¶ 20, 21.) Based on the above facts, and his knowledge and
11 experience in the beverage industry, Sacks opines: (1) the duration and "no crash" claims have caused
12 Hansen to lose sales and caused other intangible injuries; (2) the reason Hitman's sales have not
13 reached the sales levels Hansen expected, is the fact it does not make similar claims; and (3) energy
14 shot products making these claims have earned sales at the expense of Monster Energy sales. (Sacks
15 Decl., ¶¶ 13-15, 19-21, 23.) Sacks further states the "7-hour" duration claim is Power Rush's principal
16 and most visible claim, and clearly the primary benefit offered by the product. (Sacks Decl. ¶ 12.)

17 Hansen has submitted evidence from which a reasonable jury could find VPX's alleged false
18 advertising motivated consumers to purchase Power Rush over Monster Energy or Hitman. Hansen's
19 consumer survey expert, Dr. Alex Simonson, opines that a significant number of consumers
20 understand from Power Rush's label that Power Rush claims to provide seven hours of energy. The
21 results of Dr. Alex Simonson's consumer survey show that a significant number (a total of more than
22 40%) of consumers understood from the Power Rush label that the product claims to provide seven
23 hours of energy.[5] (Declaration of Alex Simonson ¶¶ 6-10.) In addition, Hansen's consumer behavior

---

[4]These distribution levels remained relatively consistent in later quarters. (Sacks Decl. ¶ 17.) In certain major cities, Hansen enjoys even greater distribution levels: 98-100% in Atlanta, Dallas, Los Angeles, Phoenix, Portland, and San Francisco. (Sacks Decl. ¶ 17.) In those same cities, Power Rush's distribution levels ranged from 11-29%. (Sacks Decl. ¶ 17.)

[5]An initial 22 percent of the persons surveyed identified a duration claim in response to the open-ended questions - "What, if anything, did the container communicate to you?" and "anything else?" An additional 19 percent identified a duration claim when prompted with a series of leading

1  and marketing expert, Dr. Itamar Simonson, opines consumers would be motivated to purchase drinks
2  like Power Rush making duration and "no crash" claims over similar drinks which do not make these
3  claims, including Monster Energy and Hitman.  In his report, Dr. Itamar Simonson states: "An energy
4  drink presented as providing seven hours of energy and "no crash" is likely to create the impression
5  that a comparison energy drink that does not promise such benefits is clearly inferior."  (Declaration
6  of Itamar Simonson, Ex. A,  Expert Report of Itamar Simonson, at 10.)  He further concludes: "Such
7  (mis)perceptions of brand superiority will likely cause the comparison brand, including Hansen's
8  Monster Energy, a significant loss of sales." Id.

9  VPX contends Hansen's evidence is insufficient to create a genuine issue of material fact.
10 VPX's main argument is that, given the dozens of other energy shots like Power Rush on the
11 market, a consumer who was motivated to purchase Power Rush because of the duration and "no
12 crash" claims would have purchased one of these other energy shots if Power Rush were not
13 available.  These customers would not have purchased a Hansen product, which does not make
14 these claims.  VPX further argues that purchase of an energy shot like Power Rush, does not divert
15 sales from Monster Energy, an energy *drink*.  Power Rush is a low-volume, non-refrigerated shot
16 of caffeine that can be carried in a pocket or purse and consumed over several days.  By contrast,
17 Monster Energy is a large-volume, chilled, carbonated drink that would be consumed soon after
18 opening.  An energy shot commonly sells for over $3.00, while an energy drink can be purchased
19 for $1.50.

20 However, the Court must draw all reasonable inferences in favor of Hansen, the
21 nonmoving party.  See Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).
22 Based on the evidence presented by Hansen, a genuine issue of material fact exists as to whether
23 VPX's alleged false advertising caused Hansen actual injury.

24         3.      <u>Amount of Damages</u>

---

questions about whether the label communicated "an amount of time." These questions were: Q2 "What, if anything, did the container communicate to you about what the product provides?; Q3(a) "Did or didn't the container communicate to you anything about an amount of time?"; Q3(b): "What did the container communicate to you about an amount of time?"; Q3(c): "What, if anything, did this mean to you?"

1   However, as VPX argues, Hansen does not present sufficient evidence of the amount of
2   damages. Hansen is required to establish the amount of damages with "reasonable certainty." See
3   Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407-1408 (9th Cir. 1993). While damages
4   need not be calculated with "absolute exactness," "a reasonable basis for computation must exist."
5   Id. (quoting Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379 (1927)). To
6   establish damages under the lost profits method, a plaintiff must make a "prima facie showing of
7   reasonably forecast profits." Lindy Pen Co., 982 F.2d at 1407.

8   Hansen fails to articulate how VPX's profits from Power Rush and Princess is a reasonable
9   measure of compensation for Hansen's lost profits and damage to Hansen's reputation and
10  goodwill. Presumably, the underlying theory is that for every Power Rush or Princess sale,
11  Hansen lost a Monster Energy or Hitman sale. There is little evidence this is the case. "[E]ven if
12  consumers are likely to suffer injury from a defendant's deception about its own product, when
13  advertising does not directly compare defendant's and plaintiff's products, when numerous
14  competitors participate in a market, or when the products are aimed at different market segments,
15  injury to a particular competitor may be a small fraction of the defendant's sales, profits, or
16  advertising expenses." Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 209 (9th Cir.
17  1989). Here, VPX's alleged false advertising does not compare its products to Hansen's products;
18  there are dozens of energy products on the market; and energy shots and energy drinks are to at
19  least some degree aimed at different market segments. With respect to Princess, VPX has
20  presented evidence that Princess, which is an energy drink in a pink bottle, is marketed to female
21  consumers. (Owoc Decl. ¶ 8.) VPX contends although there are other energy drinks on the
22  market targeted to female consumers, Hansen does not sell such a product. (Owoc. Decl. ¶ 8, Ex.
23  3.)
24  Under these circumstances, VPX's profits from Power Rush and Princess is not a reasonable
25  measure of harm to Hansen. Such an award would be inequitable, and would constitute a penalty,
26  rather than compensation. See 15 U.S.C. § 1117(a).

27  Moreover, Hansen fails to provide a sufficient basis for a damages determination in any
28  amount. Sacks's declaration is the only piece of evidence providing any market data or sales

1  figures.  This declaration falls short of the type of evidence other courts have found to be a
2  reasonable basis for a damages determination under Section 1117 of the Lanham Act.  In U-Haul
3  Intern., Inc. v. Jartran, Inc., 793 F.2d 1034 (9th Cir. 1986), a false comparative advertising case,
4  the Ninth Circuit affirmed the district court's damages award.  In U-Haul, plaintiff sued defendant
5  for false advertising comparing the rental truck prices of the two companies.  Id. at 1036.  The
6  district judge calculated damages under two distinct methods.  Id. at 1037.  The first method relied
7  on revenue projections for plaintiff as a whole, showing a substantial revenue shortfall because of
8  the false advertisements.  Id.  Relying on this evidence, the district court awarded $20 million in
9  actual damages.  Id.  The second theory relied on the cost of defendant's advertising campaign, $6
10 million, and the cost of corrective advertising by plaintiff, $13.6 million.  Id.  This also produced
11 an award of $20 million.  Id.

12     Also, in Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513 (10th Cir. 1987), a trademark
13 infringement case, the Tenth Circuit reversed the district court's finding that plaintiff failed to
14 demonstrate actual injury.  In Brunswick, the plaintiff alleged defendant's fishing rod design was
15 copied from plaintiff's Zebco 33 spin-cast reel fishing rod.  Id. at 516.  The Tenth Circuit held that
16 although each sale of defendant's fishing rod may not have resulted in a corresponding loss of a
17 Zebco 33 sale, the theory provides an upper range for an award of damages.  Id. at 526.  The Tenth
18 Circuit explained the district court may also look to the difference in the decline of Zebco 33 sales
19 as compared with the decline in sales of plaintiff's other spin-cast reels.  Id.  The plaintiff had
20 submitted evidence that sales of its spin-cast reels decreased by six percent due to the recession,
21 but sales of Zebco 33 dropped sixteen percent.  Id. at 525.  The court held that this evidence
22 "provide[s] the court a broad basis from which it may arrive at a fair, if not precise, amount with
23 which to compensate [plaintiff] for wrongful infringement."  Id. at 526.

24     Finally, in EFCO Corp. v. Symons Corp., 219 F.3d 734 (8th Cir. 2000), a false comparative
25 advertising case, the Eighth Circuit affirmed the district court's award of damages.  In EFCO, the
26 plaintiff alleged defendant falsely claimed, among other things, that its concrete cast products were
27 stronger than plaintiff's products.  Id. at 738.  Plaintiff's expert based his damage calculations on
28 information about plaintiff's and defendant's revenues, and focused on the panel leasing market,

1  where plaintiff and defendant were the only major competitors. Id. at 739. From the leasing
2  market shifts, the expert extrapolated plaintiff's past and future damages. Id. The Tenth Circuit
3  held these calculations provided the jury with sufficient evidence from which to make a damages
4  determination, and that criticisms as to the expert's methodology where merely "grist for the jury."
5  Id.
6  //

7        Unlike the cases above, the evidence submitted by Hansen fails to provide a sufficient
8  basis for a damages determination. Sacks bases his opinions on the fact that between 2006 and
9  2009, Monster Energy's sales growth slowed considerably (from 107% to 3%), while 5-Hour
10 Energy's sales growth was consistently strong (613% to 77%). This is not evidence from which
11 the Court can reasonably estimate Hansen's lost profits. Although Hansen contends it has not met
12 "reasonable expectations" for growth, no reasonable sales projections for Monster Energy or
13 Hitman have been provided to the Court. Sacks merely opines that "[b]ased on Hansen's
14 distribution relationships, distribution levels, and brand recognition with Monster Energy,"
15 Hitman's sales have not reached expected sales levels, and that energy shot products making
16 duration and "no crash" claims have earned sales at the expense of Monster Energy sales. Nor
17 does Sacks compare the sales levels of Monster Energy or Hitman to the sales levels of any of
18 Hansen's other products. Also, there is no comparison of Power Rush's or Princess's market share
19 and sales with those of Monster Energy or Hitman.
20       Because Hansen has not provided a reasonable basis for computing damages, any
21 determination of damages would be speculative, and therefore improper. See McClaran v. Plastic
22 Industries, Inc., 97 F.3d 347, 361 (9th Cir. 1996) (reversing award of lost profits based upon
23 speculation); Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400 ("Many courts have denied a
24 monetary award in infringement cases when damages are remote and speculative.").[6] While

---

[6] Hansen points to a statement by the Second Circuit in PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc. that "courts may engage in 'some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing.'" 818 F.2d 266 (2d Cir. 1987), *abrogated on other grounds as stated in*, Scutti Enterprises, LLC. v. Park Place Entertainment Corp., 322 F.3d 211, 216 (2d Cir. 2003). However, PPX is only persuasive authority, and as stated above, the Ninth Circuit has held that damages cannot

1  damages need not be calculated with "absolute exactness," "a reasonable basis for computation
2  must exist." Id. (quoting Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379
3  (1927)).

4  Therefore, Hansen is not entitled to actual damages.

5  **C.  VPX's Profits**

6  In addition to actual damages, Section 1117(a) expressly provides for an award of
7  "defendant's profits," "subject to the principles of equity." 15 U.S.C. § 1117(a). Under this theory,
8  proof of actual injury is not needed to recover defendant's profits. See Gracie v. Gracie, 217 F.3d
9  1060, 1068 (9th Cir. 2000); Southland Sod, 108 F.3d at 1146 (citing Lindy Pen, 982 F.2d
10 at1410-11); Maier Brewing, 390 F.2d at 123. However, "an accounting of profits is not automatic
11 and must be granted in light of equitable considerations." Lindy Pen, 982 F.2d at 1405. Plaintiffs
12 are not entitled to a windfall. Id.

13 The Ninth Circuit has recognized three justifications for awarding an infringer's profits: (1)
14 as a means of compensating the plaintiff for diverted sales; (2) to prevent unjust enrichment; and
15 (3) to serve a deterrence policy. See Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d
16 117, 123 (9th Cir. 1968). In determining whether to award profits, the intent of the infringer is
17 relevant. Id. Indeed, where infringement is deliberate and willful, the Ninth Circuit has found that
18 a remedy no greater than an injunction "slights" the public. Id. (citing Playboy Enterprises, Inc. v.
19 Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274 (9th Cir.1982)).

20 None of these justifications is applicable here. First, as discussed above, Hansen has not
21 demonstrated VPX's profits are a reasonable proxy for diverted sales. Second, Hansen makes no
22 showing of unjust enrichment. There is no evidence that VPX intended to deceive consumers. See
23 Lindy Pen, 982 F.2d at 1406 (profits not allowed where "trademark was weak and . . .
24 infringement was unintentional"); National Lead Co. v. Wolfe, 223 F.2d 195, 205 (9th Cir. 1955),
25 *cert. denied*, 350 U.S. 883 (1955) (profits allowed where evidence showed false and misleading
26 advertising, and a "deliberate and intentional design" to deceive purchasers); Maier Brewing, 390
27 F.2d at 124 (profits allowed where defendants "knowingly, willfully and deliberately infringed").

28

be based on speculation.

1  Finally, awarding VPX's profits would not serve a deterrence policy. Under these circumstances,
2  an injunction would fully serve the policies underlying the Lanham Act. <u>See</u> <u>id.</u> at 124 (explaining
3  an injunction alone can, under appropriate circumstances, fully satisfy the equities of a given case,
4  particularly in the absence of a showing of wrongful intent).

5  Therefore, Hansen is not entitled to VPX's profits.

## CONCLUSION

7  Accordingly, the Court GRANTS VPX's motion for partial summary judgment regarding
8  damages and monetary relief. The Court declines to award Hansen monetary relief under either
9  the Lanham Act or California Business and Professions Code §§ 17200 and 17500.

10 IT IS SO ORDERED.

**DATED: August 3, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**